Matter of Sibley v Watches (2021 NY Slip Op 02908)





Matter of Sibley v Watches


2021 NY Slip Op 02908


Decided on May 7, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, CURRAN, AND DEJOSEPH, JJ.


325 OP 20-00556

[*1]IN THE MATTER OF MONTGOMERY BLAIR SIBLEY, PETITIONER,
v
CHAUNCEY JOSEPH WATCHES, RESPONDENT. 






MONTGOMERY BLAIR SIBLEY, PETITIONER PRO SE. 
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (FRANK BRADY OF COUNSEL), FOR RESPONDENT. 


 Proceeding pursuant to CPLR article 78 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department pursuant to CPLR 506 [b] [1]) to review a determination of respondent. The determination denied the application of petitioner for a pistol license. 
It is hereby ORDERED that the determination is unanimously modified on the law and the petition is granted in part by annulling that part of the determination that enjoined petitioner from reapplying for a pistol license until he is readmitted to the New York State bar, and as modified the determination is confirmed without costs.
Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking, inter alia, to annul the determination denying his pistol license application. Contrary to petitioner's contention, the alleged procedural errors that he raises in the petition did not deprive him of his right to due process during the pistol license application review process. Initially, we reject his contention that respondent should have complied with the State Administrative Procedure Act (SAPA) in determining petitioner's application. We note that SAPA applies only to agencies of the state government and not to local officials such as respondent here (see State Administrative Procedure Act § 102 [1]; Matter of Tefft v Hutchinson, 93 AD3d 1332, 1333 [4th Dept 2012]). Indeed, we further note that the relevant statutes governing review of pistol license applications contemplate that local officials—rather than state officials—are to review pistol license applications (see Penal Law §§ 265.00 [10]; 400.00 [3] [a]).
We further conclude that petitioner was not denied due process when respondent communicated with petitioner's employer and the Sheriff's Office because those communications were necessary for respondent to comply with his responsibility under Penal Law § 400.00 (1) to investigate whether "all statements in a proper application for a license are true" before issuing a license. Respondent needed to communicate with petitioner's employer to investigate petitioner's claim in his application that he needed a pistol for his job. Additionally, we note that the statute requires that "there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made," and that the Sheriff's Office was required to communicate with respondent and "report the results [of its investigation] to the licensing officer" (§ 400.00 [4]). Thus, we reject petitioner's contention that those communications constituted improper ex parte communications that required respondent to disqualify himself from considering the application.
We also reject petitioner's contention that he was denied due process because respondent failed to disclose the substance of his conversation with petitioner's employer. That contention is belied by the record. At the hearing, respondent informed petitioner about the substance of that conversation—i.e., that petitioner's employer said that having a pistol would be helpful, but was not necessary, for petitioner's work. There is no violation of due process where, as here, [*2]petitioner was given notice of the information respondent obtained from the employer, and was given the chance to address that information at the hearing (see generally Matter of Curts v Randall, 110 AD3d 1452, 1452 [4th Dept 2013]; Matter of La Grange v Bruhn, 276 AD2d 974, 975 [3d Dept 2000]). Indeed, we note that petitioner introduced evidence at the hearing to support his position that he needed a pistol to do his job.
We further reject petitioner's contention that the failure to hold a hearing before respondent made his initial determination to deny the application violated petitioner's right to due process. Under Penal Law § 400.00 (4-a), a "licensing officer must either deny the application for reasons specifically and concisely stated in writing or grant the application and issue the license applied for. If the licensing officer denies the application, [t]he petitioner must be given the specific reasons for the denial . . . and be given an opportunity to respond to the objections to [his] application" (Matter of Parker v Randall, 120 AD3d 946, 947 [4th Dept 2014] [internal quotation marks omitted]; see Matter of Savitch v Lange, 114 AD2d 372, 373 [2d Dept 1985]). Here, respondent complied with due process and Penal Law § 400.00 (4-a) because, in his initial determination, respondent provided petitioner with a specific reason for the denial of the application and allowed petitioner to request a hearing to address respondent's concerns. There is no requirement under Penal Law § 400.00 that respondent conduct an evidentiary hearing prior to making a determination, provided, inter alia, that petitioner has an adequate opportunity to respond to that determination (see generally Matter of Chomyn v Boller, 137 AD3d 1705, 1706 [4th Dept 2016], lv denied 28 NY3d 908 [2016]).
We also reject petitioner's contention that he lacked notice of the issues to be considered at the hearing and that respondent did not articulate the reasons for his denial of the application (see generally Matter of Cuda v Dwyer, 107 AD3d 1409, 1409 [4th Dept 2013]; Matter of Vale v Eidens, 290 AD2d 612, 613 [3d Dept 2002]). The record squarely contradicts that contention. Several months before the hearing, respondent sent petitioner a letter notifying him of multiple areas of concern about petitioner's application. Furthermore, respondent's decision denying the application provided specific reasons for that determination (see generally Parker, 120 AD3d at 947).
We further reject petitioner's contention that he was deprived of due process based on the length of time it took to process the application (see Penal Law § 400.00 [4-a]). Petitioner submitted his application in July 2018, at which point it was referred to the Sheriff's Office for the investigation required by Penal Law § 400.00 (4). That investigation was not completed until May 2019. Respondent made his initial determination denying the application three weeks later. Although a "police authority" is required to "report the results [of its investigation] to the licensing officer without unnecessary delay" (§ 400.00 [4]), petitioner never sought to compel the Sheriff's Office to speed up the investigation so respondent could process the application, and there is no evidence in the record that respondent unduly delayed his initial determination. Further, most of the delay about which petitioner complains, which occurred between respondent's initial determination in May 2019 and his final determination in March 2020, was caused by petitioner. Indeed, petitioner himself requested several adjournments of the hearing, and ultimately requested that the hearing be held in January 2020. Thus, because respondent is not responsible for the delay in the determination of petitioner's application, he did not deprive petitioner of due process.
With respect to petitioner's challenge to the constitutionality of the pistol licensing application statutes—i.e., Penal Law §§ 400.00 (1) and 265.00 (10)—we note that "[a] declaratory judgment action is the proper vehicle for [such a] challeng[e]" (Matter of Velez v DiBella, 77 AD3d 670, 671 [2d Dept 2010]; see Matter of Nelson v Stander, 79 AD3d 1645, 1647 [4th Dept 2010]). Petitioner "may not seek declaratory relief in this original proceeding pursuant to CPLR article 78 . . . [because] this Court lacks jurisdiction to consider a declaratory judgment action in the absence of a proper appeal from a court order or judgment" (Matter of Jefferson v Siegel, 28 AD3d 1153, 1154 [4th Dept 2006] [internal quotation marks omitted]; see Nelson, 79 AD3d at 1647; Matter of Cram v Town of Geneva, 182 AD2d 1102, 1102-1103 [4th Dept 1992]). Thus, "petitioner's contention[s] that[, inter alia,] certain aspects of the licensing eligibility requirements of Penal Law § 400.00 (1) unconstitutionally infringe upon his right to bear arms under the Second Amendment" are not properly before us (Matter of Jackson v Anderson, 149 AD3d 933, 934 [2d Dept 2017]).
We reject petitioner's contention that respondent's determination denying his application was arbitrary or capricious. "The State has a substantial and legitimate interest and[,] indeed, a grave responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument" (Matter of Galletta v Crandall, 107 AD3d 1632, 1632 [4th Dept 2013] [internal quotation marks omitted]). A licensing officer, such as respondent, "has broad discretion to grant or deny a permit under Penal Law § 400.00 (1)" (Parker, 120 AD3d at 947), " 'and may do so for any good cause' " (Galletta, 107 AD3d at 1632). A licensing officer's factual findings and credibility determinations are entitled to great deference (see generally Cuda, 107 AD3d at 1410).
Here, we cannot conclude that respondent abused his discretion or acted irrationally in denying the application on the ground that petitioner lacked good moral character (see Matter of Zeltins v Cook, 176 AD3d 1574, 1575 [4th Dept 2019]; Matter of Moreno v Cacace, 61 AD3d 977, 978-979 [2d Dept 2009]). Specifically, respondent's determination is amply supported by evidence in the record establishing petitioner's significant history of pursuing vexatious and frivolous litigation, which often resulted in the imposition of sanctions, and his willful failure to pay child support arrears, which resulted in him being held in civil contempt in Florida and incarcerated for 78 days. Respondent also properly considered that petitioner's behavior resulted in his suspension from the Florida Bar (see Florida Bar v Sibley, 979 So 2d 221, 221 [Fla 2008], reh denied 995 So 2d 346 [Fla 2008], cert denied 555 US 830 [2008]), and the reciprocal suspension of his law license in New York (Matter of Sibley, 61 AD3d 85, 87 [4th Dept 2009], appeal dismissed 12 NY3d 849 [2009], reconsideration denied 12 NY3d 911 [2009], cert denied 558 US 808 [2009]), and several other jurisdictions (see e.g. Matter of Discipline of Sibley, 559 US 1002, 1002 [2010]; Matter of Sibley, 564 F3d 1335, 1337 [DC Cir 2009], cert dismissed 558 US 943 [2009]; Matter of Sibley, 990 A2d 483, 486 [DC 2010], cert dismissed 562 US 806 [2010]). Further, respondent properly considered evidence that petitioner lacked remorse for his frivolous conduct, showed contempt for the judicial system, and failed to comprehend the nature of his conduct in court (see generally Zeltins, 176 AD3d at 1575).
Although respondent did not err in denying the application, we nonetheless also conclude that respondent was without authority to enjoin petitioner from reapplying for a pistol licence until he is readmitted to the New York State bar. Respondent did not impose that injunction in his capacity as a County Court judge, but rather while acting as a licensing officer (Penal Law § 265.00 [10]) in a quasi-judicial capacity (see Matter of Goldstein v Schwartz, 185 AD3d 929, 930 [2d Dept 2020]). Thus, the issuance of an injunction was "beyond the scope of [respondent's] powers to either deny or grant the application" (id.; see Penal Law § 400.00 [4-a]). We therefore modify the determination accordingly.
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court